IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMY L. BIDDLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Civ. 08-142 Erie |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## OPINION

This case is before us on appeal from a final decision by the defendant, Commissioner of Social Security ("the Commissioner"), denying plaintiff Amy L. Biddle's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. The parties have submitted cross-motions for summary judgment. (Doc. 6 and 8). For the reasons stated below, the Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

## I. General Background

Ms. Biddle protectively applied for DIB and SSI on December 7, 2005, alleging disability based on the mental impairments of depression and anxiety disorder since June 2, 2002. (R. 57-61, 64, 472-76). Plaintiff's date last insured for purposes of her DIB claim was June 30, 2006; thus, she had to establish that she was disabled on or before this date in order to be entitled to a period of disability and DIB. 42 U.S.C. § 423(a), (c); 20 C.F.R. § 404.101. Her application was initially denied, and she requested a hearing.

Ms. Biddle, represented by counsel, appeared and testified at an administrative hearing before Administrative Law Judge ("ALJ") Lamar W. Davis on November 7, 2007. (R. at 477-96). A vocational expert ("VE") also testified at the hearing. On January 9, 2008, the ALJ

issued his decision denying DIB and SSI benefits and concluded that Ms. Biddle was "not disabled" under the Act. (R. at 11-25). Ms. Biddle requested a review by the Appeals Council. (R. 9). The Appeals Council denied Ms. Biddle's request for review on March 24, 2008, thereby making the ALJ's decision the final decision of the Commissioner.

Following the Appeals Council action, Ms. Biddle filed this action seeking judicial review of the ALJ's decision.

## II. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir.1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir.1995)). Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently. Fargnoli, 247 F.3d at 38; 42 U.S.C. § 405(g).

"Under the Social Security Act, a disability is established where the claimant demonstrates that there is some 'medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period.'" Fargnoli, 247 F.3d at 38-39 (quoting Plummer, 186 F.3d at 427 (other citation omitted)); see also 20 C.F.R. § 404.1505(a). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Fargnoli, 247 F.3d at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Commissioner has provided the ALJ with a five-step sequential evaluation process to be used when making this disability determination. See 20 C.F.R. § 404.1520. The United States Court of Appeals for the Third Circuit sets forth the five-step procedure as follows:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § [404.] 1520(a). . . .  In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). . . . In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir.1994). If the claimant is unable to resume her former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir.1984).

Fargnoli, 247 F.3d at 39 (quoting Plummer, 186 F.3d at 428).

For mental impairments, an additional regulatory process supplements the

five- step process outlined above:

> [This process] require[s] the hearing officer (and ALJ) to record the pertinent signs, symptoms, findings, functional limitations and effects of treatment contained in the case record, in order to determine if a mental impairment exists. If an impairment is found, the examiner must analyze whether certain medical findings relevant to a claimant's ability to work are present or absent. The examiner must then rate the degree of functional loss resulting from the impairment in certain areas deemed essential for work. If the mental impairment is considered "severe", the examiner must then determine if it meets a listed mental disorder. If the impairment is severe, but does not reach the level of a listed disorder, then the examiner must conduct a residual functional capacity assessment. At all adjudicative levels, a Psychiatric Review Treatment Form ("PRT form") must be completed. This form outlines the steps of the mental health evaluation in determining the degree of functional loss suffered by the claimant.

Knight v. Barnhart ,195 F.Supp.2d 569, 578-79 (D. Del. 2002).

The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment due to a medically determinable impairment. Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir.1979). Once the claimant meets this burden, steps one through four described supra, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity. Id.

3

## III. Factual History

Ms. Biddle was born on April 25, 1972 and was 30 years old on the date that she alleged her disability began. (R. 63.) She has a high school education. She has past work experience as a packer for both a manufacturer and a light industrial packing company. (R. at 69, 75-77, 480-82, 491-92).

Beginning in May, 2004, Ms. Biddle began treatment at Stairways Behavioral Health Outpatient Clinic (Stairways) for marital and family counseling. She was examined on July 14, 2004 by psychiatrist C. Bryan Norton, M.D., who diagnosed her with an adjustment disorder with mixed anxiety and depressed mood. (R. 214.) He noted that some of her financial and marital difficulties were as a result of her current husband's refusal to get a job and his apparent satisfaction with living on her child support income. R. 204, 211-12. Dr. Norton prescribed Wellbutrin for her depression, as well as Xanax and Seroquel to help her cope with situational stress episodes. (R. 202-03, 204-210, 212, 214). He emphasized that she "appears to be responding primarily to a present situational crisis around her current marriage. . . . I don't think that there is any major psychiatric disturbance." (R. 214). He noted her stress situations to be contentious child custody dispute with her former husband, marital conflicts with her current husband, and an unstable living arrangement. (R. 202, 204-210.) He placed her GAF[1] at 50. (R. 214.)

Throughout 2004-05, Dr. Norton noted that Ms. Biddle was alert, coherent, had a stable mood, bright affect, and well-organized thoughts, and was responsive to questions. (R. 202-09).

---

[1] The GAF scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's psychological, social and occupational function. Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed. 2000). A score between 41 and 50 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupation, or school functioning (e.g. no friends, unable to keep a job). Id. A GAF score between 51 and 60 indicates some moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or school functions (e.g. few friends, conflicts with peers or co-workers). Id.

4

He also noted that she had a tendency to be talkative, tangential, ramble and provide too much detail in her responses. (R. 202-09). He also noted that she appeared to have improved her depression, but had lingering a problem with focusing her thoughts due to family issues. (R. 202, 205-07, 209). On October 26, 2005, Plaintiff reported to Dr. Norton that she had enrolled in a vocational/technical class called "New Choices, New Options" which made her more energized and hopeful about her future job options. (R. 203). She also reported, however, that while she felt good in class, when she came home she felt depressed again. (R. 203). He observed that although her mood was more positive, she exhibited a disorganization in filtering and sorting data which "could" reflect an attention deficit disorder. (R. 203) His plan called for continuation of her current medication. (R. 203)

Beginning in January, 2006, Ms. Biddle was treated by a different psychiatrist, Mark Beuger, M.D. at Stairways. (R. 199). He examined her every two to three months for medication checks through October 2007. (R. 453-60). During that time, Ms. Biddle also participated in fourteen individual therapy sessions with a mental health counselor. She was described as being "stable" with individual therapy as long as she continued to attend her treatment sessions. (R. 453-60).

In October 2007, Dr. Beuger completed a medical assessment of plaintiff's ability to perform work-related mental activities. He opined that she had a poor ability to perform almost all of the various occupational, performance, and personal/social activities associated with work. (R. 450-51). He noted that she had the following symptoms: emotional lability, anhedonia or pervasive loss of interest, difficulty thinking or concentrating, oddities of thought, perception, speech or behavior, social withdrawal or isolation, blunt, flat or inappropriate affect. (R. 452). He placed her GAF score at 50, and noted that the highest GAF in the past year was 55. (R. 452). He also opined that she could not work a normal work day or work week. (R. 451-52).

In February 2006 and September 2007, state agency psychological consultants reviewed the evidence regarding Ms. Biddle's mental impairments. (R. 433-48). On February 1, 2006 it was noted that she could perform simple, routine, repetitive work in a stable environment and

that she could understand, retain and follow simple job instructions and make simple decisions. (R. 435). It was also noted that she could function in production oriented jobs requiring little independent decision making. (R. 235). The consultants opined that plaintiff had no more than moderate mental limitations and that she was capable of performing the basic mental demands of competitive work on a sustained basis. (R. 433-35).

In July 2007, Anil K. Dutt, M.D., of Titusville Surgical Associates completed a medical source statement on her ability to do work-related physical activities. (R. 404-05). Dr. Dutt had removed her spleen on April 19, 2007. (R. 408). Dr. Dutt had seen her for numerous post-operative check ups, during which time it was ascertained that she was recovering and healing well; he had last seen her on July 25, 2007. (R. 404-08). He opined that she had no limitation on her abilities to lift, carry, sit stand, walk, perform postural activities, or perform any other physical function.   (R. 404-05).

On August 23, 2007, Glenn W. Thompson, Ph.D., a clinical psychologist, performed a consultative psychological examination of Ms. Biddle. (R. 411-23). He noted that she complained of depression and anxiety, and that she had numerous stressors in her life, including marital problems, financial stress, living in a new town, caring for a 4 year old child, losing custody of her two older children, and a tentative living arrangement with the possibility of eviction. (R. 412-14).   Dr. Thompson opined that she was below average in performing activities of daily living, had difficulties in social functioning, and was poor in performing activities involving concentration, persistence, and pace. (R. 420-22). He diagnosed her with major depression, including a descriptor of it being moderate, recurrent, and with a seasonal pattern, and also, panic attacks with agoraphobia, and possible attention deficit hyperactivity disorder. (R. 419-20). He completed a medical assessment of her ability to perform work-related mental activities. (R. 421-23). He said she was "moderately to extremely" impaired in understanding remembering and carrying out instructions, and "moderately to markedly" impaired in responding and interacting appropriately to supervision, co-workers, the public and work pressures in a work setting. (R. 421-22).

The vocational expert ("VE") testified that Ms. Biddle's past relevant work as a packer was unskilled and ranged from medium to heavy in exertional level. (R. 491-92). The ALJ asked the VE to assume a hypothetical individual with the same vocational profile as Ms. Biddle, who was capable of unlimited exertional activity, and who was limited to simple, routine, repetitive tasks involving no more than incidental exercise of independent judgment or discretion, incidental changes in work processes, with no piece work production rate pace, no interaction with the general public, and no more than incidental interaction with co-workers. (R. 492-93). The ALJ defined incidental as "rarely" or requiring "no more than one-sixth of a routine eight-hour workday." (R. 492-93). The VE testified that such a hypothetical individual was capable of performing plaintiff's past relevant work as a packer, as well as a significant number of other jobs in the national economy within the occupations of laundry worker, vehicle cleaner, and general laborer. (R. 493-94).

## IV. ALJ's Decision

In summary, the ALJ found that based on Ms. Biddle's exertional and non-exertional mental limitations and the her age, education, and work experience, Ms. Biddle is not under a "disability." (R. at 23-24.) In particular, the ALJ found that Ms. Biddle retains the "residual functional capacity to perform past relevant work and to make a successful adjustment to other work that exists in significant numbers in the national economy." (R. 24-25)

The ALJ undertook the five-step sequential evaluation in determining that Ms. Biddle was not disabled. The ALJ made the following findings:

(1) that Ms. Biddle had not engaged in substantial gainful activity since June 5, 2002 (R. 16);

(2) that Ms. Biddle suffers from severe impairments : a depressive disorder and anxiety disorder (R. 16);

(3) that her depressive disorder and anxiety disorder significantly limited her ability to perform basic work activities, however, she does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments set forth in 20 C.F.R. Pt. 404, SubPart P, Appendix 1, Regulations No. 4 (R. 7);

(4) that she retains the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: no ability to perform more

7

than simple, routine, repetitive tasks, involving only incidental independent judgment or discretion and changes in work processes (defined as totally not more than one-sixth of a routine eight hour work shift) and requiring no interaction with the general public and only incidental interaction with co-workers (defined as totaling not more than one-sixth of a routine eight hour work shift) but cannot be required to perform a piece work production rate pace (R. 21-23);

(5) based on her RFC and the VE testimony, Ms. Biddle was able to return to her past relevant work as a packer, as well as make a successful adjustment to her work that existed in significant numbers in the national economy (R. 23-24).

Ms. Biddle's medical records indicate treatment for both mental impairments and physical impairments. As noted, Ms. Biddle seeks disability benefits based on her mental impairments, and thus the medical evidence regarding her mental impairments is of primary concern. The ALJ reviewed medical evidence regarding both her physical and mental impairments. The ALJ specifically noted that Ms. Biddle's left shoulder pain, cervical pain and low back pain, as well as a splenectomy and removal of a kidney stone were not severe impairments, but the ALJ did consider these impairments in establishing her residual functional capacity. (R. at 17, 22-23.)

## V. Analysis

Ms. Biddle argues that the ALJ erred in rejecting and/or failing to give sufficient weight to the opinion of a treating physician. More specifically, Ms. Biddle argues that the ALJ erroneously rejected the opinion of her treating physician, psychiatrist Mark Beuger, M.D. that her ability to adjust to occupation situations was poor in all respects, including her ability to interact with other people, take direction and carry out tasks. The ALJ found that certain of Dr. Beuger's findings were internally inconsistent with his own treatment notes and inconsistent with other evidence of record. (R. at 23.) Ms. Biddle argues that even if said medical opinions of Dr. Beuger were not entitled to controlling weight they were entitled to great weight. According to plaintiff, Dr. Beuger's opinions were consistent with the report of Dr. Thompson, the state agency examiner. She argues that the ALJ improperly rejected Dr. Thompson's report because Dr. Thompson met Ms. Biddle only once occasion and also, because he based his

opinions on plaintiff's own statements. (R. 23). Plaintiff argues that the ALJ improperly placed too much reliance on the medical source statement of Dr. Dutt because his evaluation addressed her physical, rather than her mental, limitations.

We find that the record shows that the ALJ properly considered all of the medical evidence, including the various medical and psychological opinions before he rendered his decision that Ms. Biddle was not disabled under the Act.

We recognize that treating physicians' reports should be accorded great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987); 20 C.F.R. § 404.1527(d)(2). "Under applicable regulations and the law of this Court, opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." Fargnoli, 247 F.3d at 43 (citing 20 C.F.R. § 404.1527(d)(2); and Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). Nevertheless, an ALJ may reject a treating physician's opinion outright on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985).

On the other hand, "[b]ecause non-examining sources do not have an examining or treating relationship with the claimant, the weight accorded to their opinions depends upon the degree to which they provide supporting explanations for their opinion." 20 C.F.R. §§ 404.1527, 416.927. To the extent the explanations are consistent with the other substantial evidence in the case, such opinions from non-treating sources are entitled to more weight. 20 C.F.R. §§ 404.1527(d), 416.927(d). Finally, an ALJ is not bound by findings of a state agency medical or psychological consultant. 20 C.F.R. §§ 404.1527, 416.927.

An ALJ may not make speculative inferences from medical reports and is not free to employ his own expertise against that of a physician who presents competent medical evidence. Fargnoli, 247 F.3d at 37. When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Mason v. Shalala, 994

F.2d 1058, 1066 (3d Cir. 1993). The ALJ must consider all the evidence and give some reason for discounting the evidence he rejects. Stewart v. Secretary of H.E.W., 714 F.2d 287, 290 (3d Cir. 1983).

There was substantial evidence to support the ALJ's decision not to give controlling weight to Dr. Beuger's opinions. As we noted supra, Dr. Beuger opined that plaintiff could not work and that she would have a poor ability to perform almost all of the various mental activities associated with work. Nevertheless, the ALJ noted that the clinical data from Dr. Beuger and Stairways did not show a level of severity that would be disabling. The ALJ further made a finding that Dr. Beuger's opinion was internally inconsistent with his own clinical findings, as well as inconsistent with other evidence of record. (R. 23) We note that plaintiff was consistently described as being stable in her individual therapy sessions at Stairways. (R. 453-60). And although the clinical data showed that Ms. Biddle tended to have difficulty staying focused and being direct in her responses, she was alert, cooperative, coherent, had a stable mood, average intelligence, good insight, and was motivated to seek and follow treatment. (R. 202-09, 213, 453-60). Her mental health records consistently reveal that her symptoms were significantly attributed to particular stressors in her life, as noted by the ALJ. (R. 18-20). As was noted by Dr. Norton, when Ms. Biddle attended vocational class, she felt good, more energized, stimulated, and hopeful about her future, but it was when she came home that she felt depressed again. (R. 203). Plaintiff even admitted to Dr. Norton that she was willing to look for work again if it was necessary, but that her husband was opposed to her employment. (R. 213).

We further note that the ALJ considered Ms. Biddle's daily activities. Although limited, she paid the bills, used food stamps to purchase groceries, used her child support payments to support the family, and applied for cash assistance when the child support ended.

We also find that the ALJ did not disregard Dr. Beuger's opinion, but rather gave it careful consideration. He specifically noted that Dr. Beuger's medical assessment was inconsistent with the other relevant evidence including the clinical data from Stairways; he recognized that the evidence as a whole indicated that Plaintiff's mental functional capacity was

10

limited, although, not to the same level as Dr. Beuger believed. (R. 22-23). Indeed, the ALJ accounted for these limitations when, in his hypothetical question and again later, in his findings, he limited her to simple, routine, repetitious tasks, involving only incidental independent judgment or discretion, incidental changes in work processes, and no work requiring piece work production rate pace. (R. 21). He also accommodated her complaint that she did not like to socialize outside the house or be around a lot of people when he found that she would be limited to work requiring no interaction with the general public and only incidental interaction with co-workers. (R. 21, 488-89)

As for the opinion of Dr. Thompson, the ALJ explained that he accorded little weight to Dr. Thompson's opinion because it was based solely on plaintiff's self-reported symptoms and limitations, as obtained in a one-time psychological evaluation in 2007. The ALJ properly found that his opinion was inconsistent with the rest of the record, including the clinical data from Stairways, and Ms. Biddle's activity level.

Plaintiff also take issue with the ALJ's consideration of Dr. Dutt's physical capacity assessment as evidence of her mental capabilities. However, the ALJ relied on Dr. Dutt's opinion only to the extent that it supported his judgment that Ms. Biddle could perform physical work at any exertional level. (R. 23). It is clear from the record that the ALJ did not rely on Dr. Dutt's opinion in order to assess Ms. Biddle's mental, as opposed to physical, residual functional capacity, and we therefore find no error.

Finally, the ALJ found that Ms. Biddle's complaints of attention and concentration problems were only partially credible. It is the responsibility of the ALJ to make credibility determinations. Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981); Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974), cert. denied, 420 U.S. 931 (1975). The ALJ's credibility determination is entitled to deference by this Court. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3rd Cir. 1983); Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003). The ALJ, as the finder of fact, can reject, partially or fully, subjective complaints if he finds them not credible based on other evidence in the record. See Baerga v. Richardson, 500 F.2d 309, 312 (3rd Cir.

1974).

"If the ALJ determines that the claimant's subjective testimony is not fully credible, the ALJ is obligated to explain why. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir.2002) (quoting Burnett, 220 F.3d at 120). The ALJ may reject subjective complaints "if he affirmatively addresses the claim in his decision, specifies the reasons for rejecting it, and has support for his conclusions in the record." Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir. 1990). When the ALJ is faced with conflicting evidence, "he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Sykes v. Apfel, 228 F.3d 259, 266 n.9 (3d Cir. 2000)(quotations and citations omitted). A district court need not defer to the ALJ's credibility determinations that are not supported by substantial evidence. Smith, 637 F.2d at 972; Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974). We find that there is substantial evidence to support the ALj's finding regarding plaintiff's inattentiveness issues and that there was no error here. He noted:

> I find the claimant's testimony to be credible only to the extent to which it is supported by the medical evidence of record. I have found the claimant's testimony regarding her condition to not be credible as to why she could not work. See Social Security Ruling 96-7p.

(R. at 21.) The medical evidence of record does not support plaintiff's contention.

With regard to determining Ms. Biddle's residual functional capacity the ALJ considered "all relevant evidence." Fargnoli, 247 F.3d at 40 (citing 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546); Burnett, 220 F.3d at 121). Thus, we conclude that the ALJ's residual functional capacity determination is not in error as it is supported by substantial evidence.

## VI. Conclusion

The ALJ did not err in rejecting or giving the appropriate amount of weight to the opinion of Ms. Biddle's treating physician. The ALJ's decision as a whole is supported by

substantial evidence in the record. To that end, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted. The decision of the ALJ is affirmed.

    An appropriate order will be entered.

July 22, 2009
Date

/s/ Maurice B. Cohill, Jr.
Hon. Maurice B. Cohill, Jr.
Senior United States District Court Judge

cc:    counsel of record